26 C.C.P.A.(Patents)

## In re KIRBY et al.
### Patent Appeal No. 4042.

Court of Customs and Patent Appeals.
Jan. 23, 1939.

Watson, Bristol, Johnson & Leavenworth, of New York City (Clair V. Johnson, of New York City, of counsel), for appellants.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

By appeal there is here brought before us for review the decision of the Board of Appeals of the United States Patent Office affirming that of the examiner rejecting sixteen claims (being all the claims) of appellants' joint application for patent entitled "Method for the Preservation of substances." The claims are numbered 2 to 6, inclusive; 8 to 15, inclusive, and 17 to 19, inclusive.

The claimed invention, as set forth in the specification, is directed to the prevention of the growth of molds, bacteria, yeasts, and the like in or on substances by applying ethylene oxide and the like to such substances. We quote claims 2, 5, and 8 as representative:

"2. A method for the treatment of substances, which comprises inhibiting the growth of molds, bacteria, yeasts and the like by subjecting the substance to the action of ethylene oxide."

"5. A method for the treatment of foodstuffs, which comprises inhibiting the growth of molds, bacteria, yeasts and the like by subjecting a foodstuff to the action of ethylene oxide."

"8. A method for the treatment of bread, which comprises inhibiting the growth of molds by subjecting bread to the action of ethylene oxide."

It will be observed that claim 2 uses the broad term "substances"; that claim 5 uses the more restricted term "foodstuffs," and that claim 8 names only "bread."

Other of the claims contain limitations which differentiate them in language from

each other, but there are no assignments of error, nor any argument on behalf of appellants, which require a specific analysis of each claim. The limitations in the main are indicated in the description of the alleged invention set forth in the brief on behalf of appellants as follows: "The invention * * * is directed to a procedure whereby substances are preserved through the prevention or inhibition of mold, bacteria, yeast, and the like growths therein and thereon. More particularly, the substance treated is a baked product, specifically bread, and thereby the growth of mold is prevented or inhibited. This treatment may be effected with the bread in wrapped or unwrapped condition by subjection to the influence of ethylene oxide, either per se or in gaseous admixture. The contact of ethylene oxide with the bread will depend upon the temperature, the pressure and the concentration thereof, and satisfactory results are attained when bread is contacted with ethylene oxide in a concentration of about 1.2 lbs. per hundred cubic feet, at a pressure of about 0.1 atmosphere, for a period of from five to ten minutes. There results a product upon which the development of molds is controlled, and which is without noticeable change in odor or flavor."

Claims 17, 18, and 19 designate "a compound belonging to the group consisting of ethylene oxide, propylene oxide, ethylene chlorhydrin, epichlorhydrin, mesityl oxide, propylene chlorhydrin and propylene dichloride," but it is not understood that any claim of invention is based upon the inclusion of the several chemicals other than ethylene oxide.

In the brief on behalf of appellants and in the oral argument before us the greatest emphasis was placed upon the claims which are limited to bread, these being claims 8 to 15, inclusive, and claim 17.

The references cited are: British patent, 318,898, Dec. 11, 1930; Roark et al., 1,791,429, Feb. 3, 1931; Hamersley, 1,914,- 121, June 13, 1933; Gross et al., 1,962,145, June 12, 1934; Chemiker-Zeitung, Vol. 55 (1931), pp. 549, 550, and 570-2; Journal of Economic Entomology, Vol. 23 (1930), pp. 226-231.

It may be said that in addition to the foregoing references, another patent to Gross et al. was cited at one time, but this was finally withdrawn by the board because of an affidavit of appellants made under rule 75 of the Patent Office.

The board refers to the patent to Roark et al. as being the principal reference. From this, quotation will be made later.

The Hamersley patent is directed to the prevention of mold on food products, more particularly bakery products, such as breads, cakes, etc., by the use of hydrogen peroxide, or ozone.

The examiner, in his statement following the appeal to the board, said inter alia:

"All of the claims were rejected as lacking invention over the patent to Hamersley in view of the patent to Roark et al. and the British patent. Hamersley teaches a method for the treatment of 'food products, more particularly bakery products such as breads, cakes, etc. * * * whereby the growth of mould on such products is retarded and to a large extent prevented * * * comprising "bringing into contact with the bakery product to be wrapped, *material which inhibits the growth of bacteria and mould.* (Italics, the Examiner's.) The material is surrounded with the mould inhibiting gas" * * * either just prior to or during the wrapping operation.' Invention is not involved in selecting as a substitute for the ozone a gas known as having the desired property. British patent 318,898 and the patent to Roark are deemed to teach with sufficient definiteness that ethylene oxide or mixtures of ethylene oxide with carbon dioxide would have the desired mould-growth-inhibiting property, an invention would not accordingly be involved in substituting such agents for the ozone shown by Hamersley. Note in page 1, lines 10 to 12 of the British patent 318,898, that the ethylene oxide mixture is described as a 'fumigant for use in destroying pests and *germs* of all kinds,' (Italics, the Examiner's) and note also (page 1, lines 7 to 11 of the patent to Roark) that the ethylene oxide mixture is described as a material 'for destroying or checking the growth or multiplication of living organisms whether *plant* or animal which are economically injurious to man' (Italics, the Examiner's). Moulds, fungus, and bacteria would fall clearly within the class of living plant organisms which are injurious to man, whose growth would be inhibited by the ethylene oxide. The obviousness of the application of such material to the control of such plant organisms is also apparent from the statement in the last sentence of the first paragraph on page 550 of the Chemiker-Zeitung that the bactericidal

effect of the T-gas (mixture of ethylene oxide and carbon dioxide) had not been ascertained to the author's knowledge. It is submitted that the British patent 318,898 and the patent to Roark teach with sufficient clearness that ethylene oxide possesses bactericidal and fungicidal properties; and further that, without regard to such teaching, invention would not be involved in determining the bactericidal properties of the compound in view of its recognized properties, particularly in view of the Zeitung statement."

The examiner rejected claims 2 to 6, inclusive, 17 and 19 (which are not limited to bread) upon the additional ground that they are "directly anticipated by each of the excerpts from Chemiker-Zeitung and the Journal," saying—"Each of these references shows the treatment of food substances, wrapped and unwrapped, with ethylene oxide, and these claims recite a process consisting of no more than this. It is clear that if applicant's process inhibits mould growth, the processes of the references will likewise inhibit mould growth, since the same acts in the same relationship must necessarily produce the same results."

While not referring specifically to the last ground of rejection, the board by general affirmance obviously approved it. It may be said further that in its decision the board directed attention to the fact that the article cited from Chemiker-Zeitung also shows "the treatment of bread with ethylene oxide."

The patent to Roark et al., who appear to have been chemists in the United States Department of Agriculture, bears the broad title of "Insecticide and Fumigant." In the specification it is recited inter alia:

"This invention relates to improvements in materials for destroying or checking the growth or multiplication of living organisms, whether plant or animal, which are economically injurious to man.

\*  \*  \*  \*  \*  \*  \*

"We have found that ethylene oxide is an effective insecticide; that it does not injure the milling and baking qualities of wheat; that it does not bleach or otherwise injure clothing and fabrics; that it does not corrode metals; and that it is relatively nontoxic to man. Ethylene oxide is thus suitable for fumigating insects in grain, clothing, carpets, upholstered furniture, raisins and other foodstuffs in buildings where it is undesirable to use a fumigant highly poisonous to man."

A number of different insects are named for the extermination of which ethylene oxide is stated to have been successfully used, and the specification continues: "While we have described the use of ethylene oxide against certain specific pests, its application as an insecticide is not restricted to these species. Ethylene oxide may be used to kill flies, mosquitoes, and other household insects; or as a fumigant to kill any insect in an enclosed space, such as insects on trees or other vegetation temporarily confined under a fumigating test; insects in clothing, carpets, furs, upholstered furniture, etc., in a fumigating vault; insects in drawers, closets, trunks, boxes, or rooms that can be tightly closed; insects in mills, warehouses, ships, etc., and other places where the vapors of the fumigant can be confined for a definite period of time."

Claim 5 of the Roark et al. patent reads: "A material for use in combating economically harmful plant and animal organisms containing as its essential active ingredient ethylene oxide."

The disclosures of the other references are believed to be sufficiently set forth in the quotations above made from the decisions of the tribunals of the Patent Office, except that it may be said that the patent to Gross et al., 1,962,145, is concerned with a procedure whereby the nicotine content of tobacco may be reduced. It is not observable that any great importance was attached to this patent by the tribunals of the Patent Office, and we question its relevancy here, although it discusses the effect of the amount of ethylene oxide used, and the effect of the time of the exposure to the chemical of the article being treated.

It is contended on behalf of appellants, in substance, that the patent to Roark et al. discloses only the killing of insects by means of ethylene oxide; that the Journal article (of which Dr. Cotton, joint inventor with Roark, was one of the authors) adds nothing which is here relevant to the patent teaching; that the British patent discloses the use of ethylene oxide in conjunction with carbon dioxide only as an insecticide for the destruction of pests and germs, such germs being the life germs of fruits and grain and not micro-organisms growing on the fruits and grain; that the Chemiker-Zeitung article presents only results obtained through the use of ethylene oxide to remove noxious organisms (insects) from food materials, being princi-

pally concerned with alteration in the odor and taste of the foodstuffs treated, and that the Hamersley patent relates merely to the prevention of molds upon bread through the medium of hydrogen peroxide or ozone, it being insisted that because the prior art does not show the use of ethylene oxide specifically for preventing molds, bacteria, and yeast, it involved invention to substitute it for hydrogen peroxide or ozone, particularly on bread.

As for the broadest claims of the application—those using the term "substances"—we experience no difficulty in agreeing with the conclusion of the tribunals of the Patent Office that they are not patentable over the disclosures of the prior art, and the same is true as to the narrower, but still quite comprehensive, claims which use the term "foodstuffs." Certainly the prior art teaches the application of ethylene oxide to "substances" and also to articles comprehended within the narrower term "foodstuffs." It may be conceded that such prior art does not state that such application results in, or is for the purpose of, preventing mold, but, as is said in the brief of the Solicitor for the Patent Office, "The inhibiting of the growth of molds is not the process but a statement of the result of the process." When applied according to the process, the result would seem naturally to follow.

This reasoning logically applies also to the claims which are limited to bread, a foodstuff in a prepared state. As has been indicated, the excerpt from the Chemiker-Zeitung article definitely shows the application of ethylene oxide to different kinds of bread, such as "Gray bread," "Perfectly fresh," and "1 slice with crust, not packed." Here again it may be conceded that it is not stated that the application of the chemical by the authors of the article was for the purpose of preventing mold, and that the purpose of its application may have been different from the purpose in the minds of appellants; but the application of the compound—the process—is shown. Whether the bread treated was wrapped or unwrapped does not clearly appear, except that as to the crust it is stated "not packed," but, in view of the teaching of Hamersley, this is not regarded as important.

During the oral argument and in a memorandum subsequently filed by leave of the court, appellants directed our attention to certain statutory definitions of "fungicides" and "insecticides" in the Insecticide Act of 1910, 36 Stat. 331, 335, 7 U.S.C.A. § 121 et seq., and regulations promulgated thereunder, the argument being that these support appellants' contention with respect to the prior art teachings being limited to the use of ethylene oxide for extermination of insects only, and not for the prevention of mold and the like. These we have examined and considered, but under the principle of law which we regard as controlling of the issue they do not seem to have any particular pertinency.

In view of the teachings of the prior art as to the application of ethylene oxide to substances, such as foodstuffs, including specifically bread, we conclude that it did not involve invention to substitute that compound for the hydrogen peroxide or ozone used by Hamersley.

The decision of the Board of Appeals is affirmed.

Affirmed.